**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE:

ROBERT C. GRETE and
TIFFANY L. GRETE                          CASE NO.: 12-30161-WSS
                                          CHAPTER 11

      Debtors-in-possession.

_____

## DEBTORS-IN-POSSESSION'S PLAN OF REORGANIZATION

_____

Robert C. Grete and Tiffany L. Grete, also known as, the Debtors-in-Possession ("Debtors") hereby submit to their creditors their Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11, United States Code (hereafter referred to as the "Bankruptcy Code" or the "Code").

### SUMMARY OF PLAN

The Debtors own five rental properties, all of which are located in the Niceville/Valpariso area of Okaloosa County, Florida near the Fort Walton Beach/Destin area. The properties were all purchased or refinanced at the height of the real estate market but are now worth approximately half of the value at the time the market peaked. As a result, the properties are all subject to mortgages which exceed the value of the properties. In some cases, the properties are also subject to a second mortgage.

The Debtors have filed a proposed Plan of Reorganization that bifurcates the claims of the first mortgage holders on each of the properties based on the value of the

- 1 -

property. The first mortgage holder will have a secured claim equal to the value of the property and an unsecured claim for the balance owed. As to those properties which have a second mortgage, 1305 N. 23rd Street (second mortgage- Real Time Solutions), 1092 Forest Lake Terrace (second mortgage - Suntrust), and 110 Lincolnshire (second mortgage - Real Time Solutions), the second mortgage will be "stripped" from the property since, in each of those cases, there is no equity over and above the first mortgage to extend to the second mortgage leaving the second mortgage "wholly unsecured". The second mortgages will be treated as unsecured claims in Class 9.

The Debtors currently reside at 2413 Duncan Avenue which the Debtors have valued in their schedules at $485,000.00. The property is subject to a first mortgage in favor of PennyMac Loan Services with a balance of approximately $1.2 million and a second mortgage in favor of Credit Control, LLC, with a balance of approximately $429,000.00. The claim of PennyMac on the first mortgage will be bifurcated to a secured claim equal to the value of the property and an unsecured claim for the balance. The second mortgage held by Credit Control, LLC, will be treated as an unsecured claim and the lien will be "stripped".

Unsecured creditors, in Class 9, will be paid 6% of the allowed amount of the unsecured claim over a period of 60 months in equal monthly installments with interest accruing at 4.5%.

Administrative claims, owed to a priority creditor, other than the Internal Revenue Service, will be paid in full, upon the Effective Date. Any priority claims owed to any taxing authorities will be paid over a period of 60 months from the

effective date with interest accruing at 4.5%.     The priority claim of the Internal Revenue Service, if any, will be paid in accordance with the Plan.

## ARTICLE I

## DEFINITIONS

Except as otherwise indicated, the terms used in this Plan have the definitions set forth in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Northern District of Florida. In addition, the following terms shall have the following meanings:

1.1     Allowed claim shall mean a claim (a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the amended schedules prepared and filed by the Debtors with the Court and not listed as disputed, contingent or unliquidated as to amount, or (c) as set forth in the Debtors' Plan or Disclosure Statement, as filed or as subsequently amended, in either case, as to which no objection has been then determined by an order of the Court which is no longer subject to appeal. An allowed claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.2     Allowed secured claim shall mean an allowed claim secured by a lien or other security interest in property of the Debtors to the extent of the value of the property as set forth in the Debtors' Disclosure Statement or, if a valuation is requested by the secured creditor, as determined pursuant to Section 506(a) of the Code.

1.3     Confirmation date shall mean the date upon which the Order of

- 3 -

Confirmation is entered by the Court.

    1.4    <u>Court</u> shall mean the United States Bankruptcy Court for the Northern District of Florida in which the Debtors' Chapter 11 case is pending or any Court having competent jurisdiction to hear appeals from the Bankruptcy Court.

    1.5    <u>Debtors</u> shall mean Robert C. Grete and Tiffany L. Grete, the Debtors-in-Possession and the proponent of this Plan of Reorganization.

    1.6    <u>Effective Date</u> shall mean the date following the confirmation date after which no appeal of the Order of Confirmation can be taken and the date upon which all conditions precedent to the effectiveness of the Plan has occurred or been waived and upon which Counsel for the Debtors files a Notice of Effective Date with the Bankruptcy Court.

    1.7    <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan with the provisions of Chapter 11 of the Code.

    1.8    <u>Plan</u> shall mean this Chapter 11 Plan of Reorganization as amended, modified or altered in accordance with the Code.

    1.9    <u>Present Value</u> shall mean the value, as of the effective date of the Plan, of property to be distributed under the Plan and shall refer to the amount payable to creditors holding an Allowed Claim or an Allowed Secured Claim in deferred payments at a rate of interest on the Allowed Claim of Allowed Secured Claim that is necessary to realize to such Holder the value of such claim as of the Effective Date of the Plan. Unless the Holder of an Allowed Claim or an Allowed Secured Claim objects prior to the commencement of the Confirmation Hearing, or unless this Plan specifically and

expressly provides differently, the rate of interest necessary to realize such value shall be deemed to be four and a half percent (4.5%) per annum; provided, however, that in the event of an objection to such rate by the Holder of any Allowed Claim or Secured Claim, the rate of interest necessary to realize such Holder the Present Value of the allowed amount of such Holder's Claim shall be such rate as determined by the Court. As to a Holder(s) of a Claim(s) in a Class who objects to the interest rate, payments to be made pursuant to the Plan shall be computed based upon four and a half percent (4.5%) unless and until the Court determines otherwise in a Final Order, in which event the rate of interest will be adjusted accordingly.

 1.10 <u>Term of the Plan</u> shall mean the period after the effective date during which payments are being made to the creditors.

ARTICLE II

CLASSIFICATION AND TREATMENT OF CLAIMS

 The claims of creditors and interests are classified and shall be treated as follows:

2.1 (A)<u>Administrative Expense Claims: Class 1</u>

 1. <u>Allowed Administrative Expense Claims Against the Debtors</u>. Subject to the bar date provisions of Paragraph 2 of this Section, the holders of Allowed Administrative Expense Claims against the Debtors, unless otherwise agreed or set forth in this Plan, are entitled to priority under Section 507(a)(2) of the Bankruptcy Code. An Entity entitled to payment pursuant to Sections 546(c) or 553 of the Bankruptcy Code, and any Entity entitled to payment of an Administrative Expense Claim pursuant to Sections 503 and 507(a)(2) of the Bankruptcy Code, shall receive from the Debtors, on

- 5 -

account of such Allowed Administrative Expense Claim, cash in the amount of such Allowed Administrative Expense Claim on the Effective Date, or pursuant to an agreement between the Debtors and the Claimant, whichever comes later.

2.     Bar Date for Filing Applications for Allowance and Payment of Other Administrative Expense Claims.     Applications for allowance and payment of Administrative (except for Professional Fee Claims) must be filed on or within fifteen (15) days after the Confirmation Hearing. The Court shall not consider any applications for the allowance of an Administrative Expense Claim incurred prior to Confirmation that are filed after such fifteen (15) day period, and any such Administrative Expense Claim shall be discharged and forever barred. All Administrative Expense Claims that become Allowed Administrative Expense Claims after the Confirmation Hearing will be treated like other Allowed Administrative Expense Claims and will be paid on the later of the Effective Date, within thirty (30) days after becoming an Allowed Administrative Expense Claim, or pursuant to an agreement between the Debtors and the Claimant. Any such Claim that is allowed, but determined not be an Administrative Expense Claim, will be treated as a General Unsecured Claim under Class I.

3.     Payment of Deferred Administrative Expenses.     To the extent that Debtors do not have at any time prior to entry of a Final Decree sufficient funds to pay Holders of Allowed Administrative Expense Claims and the Holders of such Claims agree to defer some or a portion of their Claim, such Holder(s) shall be paid Pro Rata with Holders of Professional Fee Claims.

2.1(B) Professional Fee Claims.

1.    Allowed Professional Fee Claims Against the Debtors.    Holders of Allowed Professional Fee Claims shall receive from the Debtors, on account of such Allowed Professional Fee Claim, cash in the amount of such Allowed Professional Fee Claim on or before Effective Date, or pursuant to an agreement between the Debtors and the Claimant, whichever comes later.

2.    Bar Date for Filing Application for Allowance and Payment of Fee Claims Against the Debtors.  Holders of Professional Fee Claims shall file any final applications for allowance and payment of Professional Fee Claims within sixty (60) days after the Confirmation Date.  The Bankruptcy Court shall not consider any applications for the allowance of a Professional Fee Claim filed after such date, and any such Professional Fee Claim shall be discharged and forever barred.  All Professional Fee Claims that become Allowed Professional Fee Claims after the Confirmation date will be treated like other Allowed Professional Fee Claims and will be paid on the later of the Effective or within Thirty (30) days after becoming an Allowed Professional Fee Claim unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors and the Claimant.

3.    Payment of Deferred Professional Fee Claims.  To the extent that Debtors does not have at any time prior to entry of a Final Decree sufficient funds to pay the Holders of Professional Fee Claims and the holders of such Claims agree to defer some or a portion of their claim, such holder(s) shall be paid Pro Rata with Holders of Allowed Administrative Expense Claims by the Debtors.

2.1 (C) Priority Claims and Priority Tax Claims.

1.    Allowed Priority Claims Against the Debtors.    Subject to the bar date

provisions of Paragraph (2) of this Section, the holders of Allowed Priority Claims (other than priority tax claims as set forth below) against the Debtors shall receive from the Debtors on account of such Allowed Priority Claims, cash in the amount of such Allowed Priority Claim on the later of the Effective Date, within thirty (30) days after becoming an Allowed Priority Claim, or pursuant to an agreement between the Debtors and the Claimant.

2.       Bar Date for filing Priority Claims.    Applications for allowance and payment of Priority Claims incurred on or before the Petition date must have been filed by the Bar Date.  The Bankruptcy Court shall not consider any applications for the allowance of any Priority Claim filed after such date, and any such Priority Claim shall be discharged and forever barred.  All Priority Claims that become Priority Claims after the Confirmation Date will be treated like other Priority Claims and will be paid on the later of the Effective Date, within thirty (30) days after becoming a Priority Claim, or pursuant to an agreement between the Debtors and the Claimant.  Any such Claim that is allowed, but determined not to be a Priority Claim, will be treated as a General Unsecured Claim under Class 9.

3.       Allowed Priority Tax Claims Against the Debtors.  Subject to the bar date provisions of Paragraph (4) of this Section, the Holder of an Allowed Priority Tax Claim against the Debtors shall receive from the Debtors on account of such Allowed Priority Tax Claim, an amount equal to their Allowed Claim paid in equal, consecutive monthly payments over a five year term commencing the first full month after the Effective Date of the Plan.  Anything herein to the contrary notwithstanding, the Holder(s) of Priority

Tax Claims for ad valorem real property or tangible personal property taxes shall be treated and paid under Class 2 or Class 3.

     4.     Bar Date for Filing Priority Tax Claims. Applications for allowance and payment of Priority Tax Claims incurred on or before the Petition Date must have been filed by the Bar Date. The Bankruptcy Court shall not consider any applications for the allowance of any Priority Tax Claim filed after such date, and any such Priority tax Claim shall be discharged and forever barred. All Priority Tax Claims that become Priority Tax Claims after the Confirmation Date shall be treated like other Priority Tax Claims and will be paid on the later of the Effective Date, within thirty (30) days after becoming an Allowed Priority Tax Claim, or pursuant to an agreement between the Debtors and the Claimant. Any such Claim that is allowed, but determined not to be a Priority Tax Claim, will be treated as a General Unsecured Claim under Class 9.

2.1 (D) U.S. Trustee's Fees.

The Debtors shall timely pay post-Confirmation quarterly fees assesses pursuant to 28 U.S.C. Section 1930(a)(6) until such time as the Bankruptcy Court enters a Final Decree closing the Bankruptcy Case. Any such fees outstanding and due as of the Effective Date shall be paid on the Effective Date.

2.2     Unsecured Priority Claim of the Internal Revenue Service: Class 2

The Internal Revenue Service has an Unsecured Priority Claim for income taxes owed by the debtors for tax year ending 12/31/2012. The Debtors have filed for an extension to file the return. Accordingly, the amount of tax which may be owed has not yet been determined. The IRS has filed a proof of claim which estimates the tax to be

$3,943.80. Pursuant to the provisions of Section 1129(a)(c)(ii) of the Bankruptcy Code, the allowed amount of this claim, if any, shall be paid in full with the claim to be amortized over a period of the number of months remaining from sixty (60) months from the date of the filing of the Petition, February 13, 2012. This Claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The Claim shall include interest at the rate of 6% per anum. The Claim of this Creditor is impaired.

2.3     Secured Claim of Seterus (906 Nutmeg): Class 3

Seterus holds a claim in the amount of $209,734.23, as of the petition date, secured by real property located at 906 Nutmeg, Niceville, Florida. The Debtors have valued the property securing the debt at $80,000.00. Accordingly, the claim of Seterus shall be bifurcated and Seterus shall have a secured claim in the amount of $80,000.00 (Class 3) and an unsecured claim for the balance as a claim in Class 9, General Unsecured Claims. The secured claim in the amount of $80,000.00 shall be amortized over 20 years with an interest rate of 4.5% per annum with a five year balloon. The claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The creditor shall retain its lien until the time that this claim is paid in full. This claim is impaired.

2.4     Secured Claim of BAC Home Loans (1305 N. 23rd Street): Class 4

BAC Home Loans holds a claim in the amount of $109,000.00, as of the petition date, secured by real property located at 1305 N. 23rd Street, Niceville, Florida. The Debtors have valued the property securing the debt at $85,000.00. Accordingly, the

claim of BAC Home Loans shall be bifurcated and BAC Home Loans shall have a secured claim in the amount of $85,000.00 (Class 4) and an unsecured claim for the balance as a claim in Class 9, General Unsecured Claims. The secured claim in the amount of $85,000.00 shall be amortized over 20 years with an interest rate of 4.5% per annum with a five year balloon. The claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The creditor shall retain its lien until the time that this claim is paid in full. This claim is impaired.

2.5     Secured Claim of Bank of America (1092 Forest Lake Terrace): Class 5

Bank of America holds a claim in the amount of $197,656.06, as of the petition date, secured by real property located at 1092 Forest Lake Drive, Niceville, Florida. The Debtors have valued the property securing the debt at $160,000.00. Accordingly, the claim of Bank of America shall be bifurcated and Bank of America shall have a secured claim in the amount of $160,000.00 (Class 5) and an unsecured claim for the balance as a claim in Class 9, General Unsecured Claims. The secured claim in the amount of $160,000.00 shall be amortized over 20 years with an interest rate of 4.5% per annum with a five year balloon. The claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The creditor shall retain its lien until the time that this claim is paid in full. This claim is impaired.

2.6     Secured Claim of Bank of New York Mellon (110 Lincolnshire): Class 6

Bank of New York Mellon holds a claim in the amount of $127,769.28, as of the

- 11 -

petition date, secured by real property located at 110 Lincolnshire, Niceville, Florida. The Debtors have valued the property securing the debt at $115,000.00. Accordingly, the claim of Bank of New York Mellon shall be bifurcated and Bank of New York Mellon shall have a secured claim in the amount of $115,000.00 (Class 6) and an unsecured claim for the balance as a claim in Class 9, General Unsecured Claims. The secured claim in the amount of $115,000.00 shall be amortized over 20 years with an interest rate of 4.5% per annum with a five year balloon. The claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The creditor shall retain its lien until the time that this claim is paid in full. This claim is impaired.

2.7     Secured Claim of Nationstar Mortgage (21 Kelly Way): Class 7

Nationstar Mortgage holds a claim in the amount of $120,000.00, as of the petition date, secured by real property located at 21 Kelly Way, Niceville, Florida. The Debtors have valued the property securing the debt at $70,000.00. Accordingly, the claim of Nationstar Mortgage shall be bifurcated and Nationstar Mortgage shall have a secured claim in the amount of $70,000.00 (Class 7) and an unsecured claim for the balance as a claim in Class 9, General Unsecured Claims. The secured claim in the amount of $70,000.00 shall be amortized over 20 years with an interest rate of 4.5% per annum with a five year balloon. The claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The creditor shall retain its lien until the time that this claim is paid in full. This claim is impaired.

- 12 -

2.8    Secured Claim of PennyMac Loan Services (2413 Duncan Avenue): Class 8

PennyMac holds a claim in the amount of $1,259,843.96, as of the petition date, secured by real property located at 2413 Duncan Avenue, Niceville, Florida. The Debtors have valued the property securing the debt at $485,000.00. Accordingly, the claim of PennyMac Loans shall be bifurcated and PennMac Loans shall have a secured claim in the amount of $485,000.00 (Class 8) and an unsecured claim for the balance as a claim in Class 9, General Unsecured Claims. The secured claim in the amount of $485,000.00 shall be amortized over 20 years with an interest rate of 4.5% per annum with a five year balloon. The claim shall be payable in consecutive equal monthly installments with the first payment to be made on the first day of the first full month after the Effective Date. The creditors shall retain its lien until the time that this claim is paid in full. This claim is impaired.

2.9    General Unsecured Claims: Class 9

This class consists of claimants who have a general, non-priority unsecured claim greater than $1,000.00. Holders of allowed claims in this class will be paid 6% the present value of the allowed claim in equal consecutive monthly payments over a period of five years commencing on the first day of the first full month after the Effective Date of this Plan. Creditors in this class will receive a promissory note evidencing the debt, which shall accrue interest at 4.5%. Claims in this Class are impaired.

2.9(a) <u>General Unsecured Claims of Less than $1000.00 (Administrative Ease): Class 9(a)</u>

This Class consists of claimants who have a general, non-priority unsecured claim less than $1000.00. For purposes of administrative ease, claimants in this Class shall be paid in a one-time lump sum payment 6% of the present value of the allowed amount of the value of their claim no later than 60 days after the Effective Date of the Plan.

2.10 <u>Claims of Creditors Holding Second Mortgages: Real Time Solutions, Suntrust, Credit Control, LLC: Class 10</u>

Creditors, Real Time Solutions, Suntrust, and Credit Control, LLC, are included in this class because each of these creditors holds a second mortgage on one or more of the Debtors' properties. Because, in each case, the value of the property securing the mortgage is worth less than the balance owed on the first mortgage, the second mortgage is deemed to be "wholly unsecured." As to each of the second mortgages held by creditors listed in this class, the second mortgage shall be stripped and upon the effective date shall be deemed to no longer be a lien on the property. Any objection to the valuation as set forth in paragraph 4.3 of this Plan, must be filed with the Court and a request for valuation under section 506(a) of the Bankruptcy Code. If no objection to valuation is filed, the values set forth in the Disclosure Statement, or any amendment thereto, shall be binding for purposes of this paragraph. Creditors in this Class 10 shall be paid as a general unsecured creditor under the provisions of paragraph 9.

2.11 <u>Claim of the United States Trustee for Quarterly Fees: Class 11</u>

The Debtor shall continue to pay the required quarterly fees to the U.S. Trustee's

Office until the case is closed by dismissal or the entry of a final decree, or until the case is converted to Chapter 7.

## ARTICLE III

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1     The Debtors are landlords under leases entered into with the tenants of the various rental properties.  Upon confirmation of the Debtors' Chapter 11 Plan, the leases will all be deemed to have been assumed by the Debtors.

## ARTICLE IV

### MEANS AND IMPLEMENTATION OF THE PLAN

4.1     Means and Implementation.

The Debtors propose to fund their Chapter 11 Plan through two different sources of income.  First, the Debtors receive income from their employment with BPN Outside the Box, LLC, a company owned by the Debtors.  Robert Grete receives the sum of $1,000.00 per month as a salary.  Tiffany Grete receives $1,250.00 per month as a salary.  Additionally, each of the Debtors receives monthly distributions from the corporation in the amount of $3,250.00 each for a total of $6,500.00 per month.  After the payment of reasonable and necessary living expenses, the balance of the income from the operation of the business will be devoted to the Plan.

In addition to the income from the operation of their business, the Debtors also receive monthly rental income from the five rental properties.  The Debtors receive gross income of approximately $5,750.00 per month.  From this amount, the Debtors pay expenses of ownership (excluding payments to secured creditors on mortgages) in

- 15 -

the amount of $1581.90.    This includes costs for insurance, taxes, and periodic maintenance.  The net rental income will be combined with the Debtors' income from the operation of their business from which payments will be made to the secured creditors holding mortgages on the re-amortized secured claims secured by the rental properties.    The funds will also be used to pay monthly payments to unsecured creditors over a period of 60 months from the effective date.

4.2     Real Property Owned by the Debtors

        The Debtors own six parcels of real property which includes the Debtors' principal residence located at 2413 Duncan Avenue and the five rental properties.  The properties owned by the Debtors, together with the Debtors' estimate of the value of each property are as set forth below.  Upon confirmation of the Plan, the values set forth in this section shall be deemed to be the values of the property.  Any objection to the valuation must be filed with the Court in the form of an Objection to the Disclosure Statement and a request for valuation under section 506(a) of the Bankruptcy Code.   If an objection to the valuation of the parcel of property is filed, the value will be as agreed upon by the parties, or if no agreement can be reached, as determined by the Court:

### VALUATION OF REAL PROPERTY

1.      906 Nutmeg, Niceville, Florida.   Fair market value: $80,000.00.

2.      1305 North 23rd Street, Niceville, Florida.  Fair market value: $85,000.00

3.      1092 Forest Lake Terrace, Niceville, Florida. Fair market value: $160,000.00.

4.      110 Lincolnshire, Niceville, Florida.  Fair market value: $115,000.00.

5.      21 Kelly Way, Valpariso, Florida.  Fair market value: $70,000.00.

6.      2413 Duncan Avenue, Niceville, Florida.  Fair market value:
        $485,000.00.

## 4.3    Corporations Owned by the Debtors

The Debtors own the company BPN Outside the Box, LLC, which was formed

on October 4, 2011.  The LLC is owned 90% by the Debtors, Robert C. Grete and

Tiffany L. Grete.  The business operates at 1130 B Hospital Road, Fort Walton Beach,

Florida 32547, which is a leased property.  The business provides construction and

renovation services.  Its focus, however, is providing large scale construction drawings

for contractors and architects.  The business generates approximately $8,750.00 per

month in total income to the Debtors.  Financial information regarding the LLC, its

income and expenses and profit and losses for 2012 and projections for income for the

term of the Plan is attached hereto as "Exhibit B" to the Disclosure Statement.

## 4.4    Modification of Existing Notes

Upon the effective date of the plan, the promissory notes or any other instruments

evidencing any claim shall be deemed to be modified in accordance with the provisions

of the confirmed plan without the necessity for the execution of modification agreements

except to the extent that a new mortgage must be recorded to evidence any new term

under the plan.

## 4.5    Objections to Claims

The Debtor may object to any claim filed with the Bankruptcy Court and may

object to and contest the allowance of any such claims. Within 21 days after service of the objection, written responses must be filed with the Bankruptcy Court by the holder of the claim. Failure to file a written response shall constitute a waiver and release of the claim.

4.6   Disputed Claims

No distribution shall be made on any disputed claim until such time as the claim is resolved by agreement of the parties or by an order of the Bankruptcy Court.

ARTICLE V

ACCEPTANCE OR REJECTION OF THE PLAN

5.1   Classes Entitled to Vote

Each holder of an Allowed Claim in a Class of Claims against the Debtors which may be impaired and is to receive a distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of a claim in a Class of Claims which is unimpaired under the Plan shall be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

5.2   Cramdown

Under the Plan there are impaired classes of claims. In the event that it is determined that there are impaired class or classes of claims that do not accept the Plan, the Debtors as proponent of the Plan reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan to provide treatment sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the class or classes not

accepting the Plan, and, in particular, the treatment necessary to meet the requirements of Sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting classes and any other classes affected by such modifications. The Plan may be the subject of cramdown under Section 1129(b).

## ARTICLE VI

## EFFECT OF CONFIRMATION OF PLAN

6.1     Effect of Confirmation

A.     Vesting of Assets. On the Effective Date, all property of the estate shall vest in Robert C. Grete and Tiffany L. Grete, reorganized Debtors, in accordance with the provisions of Section 1141(b) of the Bankruptcy Code. This Plan does not provide any exceptions to such vesting.

B.     Discharge of Debtors. The Debtors are entitled to a discharge pursuant to the terms of Section 1141.

C.     Exculpations. The professionals retained by the Debtors shall have no liability to any holder of a claim or other person for any act, event or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the negotiation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence. In all such instances, the above referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Case and under the Plan. Such exculpation shall not extend to any post-petition act of any party other than in connection

with that party's official capacity in the Bankruptcy Case.

D.    Injunction.    Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against, or interests in, the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against Debtors's Assets or the Property, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the Property or interests in property of the Debtors on account of any such Claim or Interest.

E.    Releases.    Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each Holder (as well as any agents on behalf of each holder) of a Claim shall be deemed to have forever waived, released, and discharged the Debtors and attorneys for the Debtors, including J. Steven Ford and Wilson, Harrell, Farrington, Ford, Wilson, Spain & Parsons, P.A.., to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose after the commencement of this Case and prior to the Effective Date.

As of the Effective Date, the Debtors, and their respective agents, accountants, financial consultants and attorneys, including Professionals (acting in such capacity),

shall neither have nor incur liability to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, **Confirmation** or consummation of the Plan, or Disclosure Statement, or earlier versions of same or any contract, instrument, release or other agreement or documents created or entered into, or any other action taken or omitted to be taken in connection with this Plan or this Chapter 11 Case; provided, however, that the foregoing provisions of this Section shall have **no** effect on the liability of any Entity that would otherwise result from any such action or omission to the extent that such action or omission is determined in a Final Order to have constituted willful misconduct.

The injunction, release, and exculpation provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and its Chapter 11 Estate, and such provision shall be effective and binding upon **all Entities.**

6.2     Term of Injunction or Stays.

Unless otherwise provided herein or otherwise ordered by the court, all injunctions or stays set forth in Sections 105 or 362 of the Bankruptcy Code (11 U.S.C. §§105 and 362) shall remain in full force and effect until the Effective Date rather than the Confirmation Date.   Nothing in this Section, however, shall be construed as a limitation of the permanent discharge and injunction provisions provided for in this Plan.

ARTICLE VII

CONDITIONS PRECEDENT TO EFFECTIVE DATE

- 21 -

The Effective Date shall occur and will commence upon the date that all conditions to the effectiveness of the Plan have been satisfied or waived, and which shall be evidenced by the Debtors's counsel filing a Notice of Effective Date with the Bankruptcy Court. The occurrence of the Effective Date and the Substantial Consummation of the Plan are subject to satisfaction of the following conditions precedent:

7.1    Confirmation Order.

The Confirmation Order shall have become a Final Order and be in full force and effect.

7.2    Execution of Documents; Other Actions.

All other actions and documents necessary to implement the Plan shall have been executed and no conditions to the respective effectiveness thereof shall exist.

7.3    Payment of all Allowed Administrative Claims and Allowed Professional Fee Claims.

All Allowed Administrative Claims and Allowed Professional Fee Claims shall be paid by the Debtors to the extent provided herein.

7.4    Waiver.

In its sole discretion, the Debtors may waive any condition precedent, in its favor, to confirmation and to the occurrence of the Effective Date.

## ARTICLE XIII

## RETENTION OF JURISDICTION

8.1    To the maximum extent permitted by the Bankruptcy Code or other applicable law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following nonexclusive purposes:

(1)    To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution and confirmation of this Plan;

(2)    To hear and determine the allowance or classification of Claims or Existing Equity Holders' Claims and to determine any objections thereto and/or the subordination thereof;

(3)    To determine rights to Distribution pursuant to this Plan;

(4)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(5)    To determine any .and all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(6)     To hear and determine any objection to Administrative Expense Claims or Claims;

(7)     To hear and determine any Causes of Action brought or continued by or against the Debtors to the maximum extent permitted under applicable law;

(8)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(9)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(10)    To hear and determine matters concerning any Release and to enforce the injunctions set forth in the Plan;

(11)    To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(12)    To hear and determine all Fee Applications as well as objections to payment of fees and expenses;

(13)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any transactions contemplated by the Plan;

(14)    To hear and determine all questions and disputes regarding title to, and any action to recover any of, the Assets or property of the Debtors or its estate, wherever

located;

(15)    To hear and determine matters concerning state, local, and Federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(16)    To consider and act on the compromise and settlement of any claim against the Debtors or its estate;

(17)    To hear any other matter not inconsistent with the Bankruptcy Code; provided, that with respect to consideration issued to parties in interest under the Plan, the Bankruptcy Court shall have no further jurisdiction; and

(18)    To enter a Final Decree closing the Bankruptcy Case.

(19)    To consider and/or enforce the rights and claims of the parties under and pursuant to all documents or agreements entered into pursuant to the Plan or necessary for the effectiveness thereof under this Plan.

## ARTICLE IX

## MISCELLANEOUS

9.1    Binding Effects.

The Plan shall be binding upon and inure to the benefit of the Debtors, the holder of Claims and Equity Interests, and their respective successors and assigns.

9.2.    Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor,

- 25 -

administrator, successor or assign of such Entity.

9.3.    Defects, Omissions, Amendment and Modification of the Plan; Severability.

(1)    Defects, Omissions, Amendments and Modifications. The Debtors may, with the approval of the Bankruptcy Court and without notice to holders of Claims, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Debtors or Reorganized Debtors may propose amendments or alterations to the Plan before or after confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors has complied with section 1125 of the Bankruptcy Code. The Debtors or Reorganized Debtors may propose amendments or alterations to the Plan before or after the Confirmation Date but prior to substantial Consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtors has complied with section 1125 of the Bankruptcy Code, and after notice and hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

(2)    Severability. In the event that the Bankruptcy Court determines, prior

to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

9.4. Revocation or Withdrawal of the Plan.

(1)     The Debtors reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

(2)     If the Plan is revoked or withdrawn prior to the Confirmation Date the Plan shall be deemed null and void. In such event, all of the Debtors's and Creditor's respective obligations shall remain unchanged and nothing contained herein or in the Disclosure Statement shall be deemed an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of any Debtors or any Person in any further proceedings involving the Debtors.

9.5. Notices.

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, to be addressed as follows:

J. Steven Ford

Wilson, Harrell, Farrington, Ford,

Wilson, Spain, & Parsons, P.A.
307 S. Palafox Street
Pensacola, FL 32502

(850) 438-1111 Telephone
(850) 432-8500 Facsimile

Counsel for the Debtors

All notices, requests, elections or demands to or upon the Debtors or the Reorganized Debtors in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, three (3) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the above address. All notices to Claimants, Creditors, and Equity Interest holders shall be sent to their last known address. The Debtors, and any Claimant, Creditor, or Equity Interest holder, may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt.

9.6.    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

9.7.    Payment of Statutory Fees.

For so long as the Debtors's Bankruptcy Case shall remain open and pending before the Court, all fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Reorganized Debtors. For purposes of calculating the fees

payable under section 1930 of Title 28 of the United States Code, only disbursements made under or in connection with the Plan shall be taken into account.

9.8    Exemption from Certain Taxes.

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtors to any person or Entity pursuant to the Plan, any mortgage entered into by Debtors in favor to any Creditor pursuant to the terms of this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

9.9.    Headings.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

9.10.    Exhibits.

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

9.11.    Filing of Additional Documents.

On or before substantial Consummation of the Plan, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to reasonably effectuate and further evidence the terms and conditions of the Plan.

Respectfully submitted,

/s/ J. Steven Ford
J. Steven Ford
Wilson, Harrell, Farrington, Ford,
Wilson, Spain, & Parsons, P.A.
Attorneys at Law
307 South Palafox Street
Pensacola, FL 32502
(850) 438-1111 Telephone
(850) 432-8500 Facsimile

*Counsel for the Debtors, and*

/s/ Robert C. Grete
*Robert C. Grete*

/s/ Tiffany L. Grete
*Tiffany L. Grete*